319 So.2d 158 (1975)
Irving SOMERSTEIN et al., Appellants,
v.
CITY OF MIAMI BEACH, a Florida Municipal Corporation, Appellee.
CITY OF MIAMI BEACH, a Florida Municipal Corporation, Appellant,
v.
Irving SOMERSTEIN et al., Appellees.
Nos. 74-1133, 74-1365 and 74-1524.
District Court of Appeal of Florida, Third District.
July 29, 1975.
Rehearing Denied October 15, 1975.
*159 Horton, Perse & Ginsberg, Miami, Steinberg & Neustein, Miami Beach, for Somerstein and others.
Joseph Wanick, City Atty., Lionel Barnet, Sibley, Giblin, Levenson & Ward, Miami Beach, for City of Miami Beach.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
HAVERFIELD, Judge.
In these consolidated appeals we are asked to review two orders of contempt entered against defendant-appellants for their alleged violations of the terms of an injunction. The salient facts are as follows:
Since 1967 Irving Somerstein, Sidney Hechtman and Somerstein Caterers of Florida, Inc., defendants in the trial court and appellants herein, have been engaged in the business of providing a kosher catering service within the premises of Temple Emmanu-El located on Miami Beach, Florida. It appears that this kosher catering service is a necessity in that Jewish law dictates that the Bar Mitzvah or wedding ceremony must be accompanied by a kosher feast, the Feast of Merit, at which various blessings are said over the Feast itself. Appellee, City of Miami Beach, plaintiff in the trial court, for several years permitted the defendants to conduct their catering service within the premises of the Temple.
However, on March 13, 1973 the City of Miami Beach filed a complaint praying for injunctive relief against the defendants *160 upon the allegations that defendants were operating a commercial catering business upon the premises of Temple Emmanu-El in the City of Miami Beach in a high density, multi-residential zone, an area not zoned for such commercial business activity. In response thereto, defendants filed an answer, affirmative defenses and a counterclaim. The cause came on for trial before the Honorable David Popper who found that defendants were not in violation of the City's zoning ordinance when catering affairs on the premises of Temple Emmanu-EI initiated by and solely for bona fide affiliated organizations of the Temple or the Temple itself. Thereupon, Judge Popper entered the following judgment:
* * * * * *
"ORDERED AND ADJUDGED as follows:
"1. The Defendants are permanently enjoined from operating a catering business or commercial enterprise at 1701 Washington Avenue in the CITY OF MIAMI BEACH, Florida. The Defendants will be permitted, however, to perform catering services on the Temple premises solely for and only when actually initiated by Temple Emanuel or bona fide affiliated organizations thereof, such as the Temple's sisterhood, men's club or young organization of the Temple.
"2. That the Defendants-Counterclaimants take nothing by their counterclaims and that the Plaintiff-Counterdefendant go hence without day and the said counterclaims be and they are dismissed with prejudice."
* * * * * *
On June 28, 1974 Judge Popper held an additional hearing at which he attempted to clarify the terms of the above injunction as follows:
* * * * * *
"THE COURT: All right. I made these findings and I want you all to hear them and if I change anything and you are all here to hear them.
"I made findings that the Somerstein Caterers could not operate as a business from the Temple.
"I said they were an ancillary function of the temple and they could operate for temple purposes.
"I gave as examples Bar Mitzvah's, marriages and things of that nature and that is all they can do, and they cannot cater to anybody else from the temple premises.
* * * * * *
"They are ancillary for purposes such as Sisterhood, men's organizations, youth organizations and for the temple itself, and the temple in its functions and that the Rabbi is performing in behalf of the temple which could be a marriage or a Bar Mitzvah or something like that and if the Court deems it to be a temple function.
"I think I have concluded this hearing, gentlemen.
"MR. SHAPIRO: Your Honor, what about the term on the bottom of the line where it says, `Actually initiated by?'
"THE COURT: I don't care.
"I made specific statements as to the people not mentioned of the temple who could not come to the caterers and ask for a function to be performed by the caterers and if they make arrangements through the Rabbi for the marriage and the Rabbi himself contacts them then it is a temple function and if they contact him it is a temple function."
* * * * * *
Approximately two weeks later, on July 10, 1974 the City filed a motion for rule to show cause and alleged that defendants had violated the terms of the final judgment and injunction by catering on the Temple's premises several parties, to wit *161 (1) the Kaplan Bar Mitzvah on the afternoon of June 29, 1974, (2) the Katz Bar Mitzvah that evening, (3) the Reichwald-Hirschhorn wedding later that same day. Judge Popper issued a rule to show cause and a hearing was set for October 10, 1974.
On August 13, 1974 the City filed a motion seeking the court's sanctions against defendants and again alleged a violation of the June 19 injunction in that defendants catered on the premises of Temple Emmanu-EI the Vasserstein-Bialkowicz wedding on August 10, 1974 and the Genet Bar Mitzvah on August 11.
A hearing was held the following day (August 14) before the Honorable Rhea Pincus Grossman who found that the defendants had violated the provisions of the permanent injunction by catering the Vasserstein-Bialkowicz wedding upon the premises of Temple Emmanu-El and thereupon (1) held the defendants in contempt of court, (2) fined defendants Somerstein and Hechtman $1,000 each, and (3) sentenced them to a term of 30 days in the county jail commencing September 1, 1974. Upon proper motion, Judge Grossman held a rehearing on August 28, 1974 at which time Rabbi Irving Lehrman, the spiritual leader of Temple Emmanu-El, testified that Jewish law speaks of a Simcha Shel Mitzvah which is the celebration (in the form of eating dinner and so on) of the mitzvah of a religious event and, therefore, the August 10 wedding dinner was in accord with the dictates of Jewish law and tradition and a function of Temple Emmanu-EI carried out under the Temple's auspices. Nevertheless, Judge Grossman found that this use of the sanctuary of Temple Emmanu-El by defendants in providing a catering service to private persons was a subterfuge and an obvious attempt to circumvent the prohibition for the conduct and operation of a commercial catering business as set forth in the June 19 court decree. The judge then ordered defendants Somerstein and Hechtman to pay the $1,000 fines previously assessed against them and to serve a 30 day jail sentence to commence September 15, 1974. Defendants filed their appeal from this contempt order of September 3, 1974.
Thereafter, hearings on September 4 and 10, 1974 were conducted before Judge Popper concerning a motion filed by the City styled "Further Motion for Contempt" and upon defendants' motion for stay and supersedeas of the contempt order of September 3, 1974 and motion for relief therefrom. Judge Popper denied all these motions but did enter an order eliminating the jail sentences from the September 3 contempt order.
Finally, on October 10, 1974 a hearing was had before Judge Popper in regard to the rule to show cause issued on July 12, 1974 and on October 29, 1974 the judge entered a judgment of contempt which reads in part as follows:
* * * * * *
"The Court finds and determines, that the Defendants are permitted to provide catering services where those services are directly related to a religious service, performed upon the Temple Emmanuel premises, and officiated by a Rabbi employed by the Temple, whether or not the persons for whom the services have been provided are members of Temple Emmanuel, as this constitutes a `Temple-initiated function', under the provisions of the Final Judgment and Permanent Injunction, heretofore entered by the Court in this Cause, on June 19, 1974.
"Therefore, the catering services provided by the Defendants in connection with the `Kaplan Bar Mitzvah', on June 29, 1974, and for the `Mermelstein-Davis' and `Reichwald-Hirschhorn' weddings, on June 30, 1974, were not violative of the provisions of the aforesaid Final Judgment.
"However, the Bar Mitzvah party in honor of the son of Mr. and Mrs. Arnold *162 Katz, on June 29, 1974, and wherein the actual religious ceremony was not performed at Temple Emmanuel, was in violation of the aforesaid Injunction. Therefore, it is,
"ORDERED AND ADJUDGED, that the Defendants are in Contempt of this Court, for having violated the provisions of the Final Judgment and Permanent Injunction, by having provided a catering service, at Temple Emmanuel, on June 29, 1974, said service being in the nature of a commercial catering service, not ancillary to a Temple or religious function, and as a sentence therefore, the Defendant, SOMERSTEIN CATERERS OF FLORIDA, INC., shall forthwith pay a fine, into the Registry of the Court, in the sum of ONE HUNDRED ($100.00) DOLLARS."
* * * * * *
Defendants appealed from this contempt judgment and the City of Miami Beach also appealed.
We first turned our attention to the argument of appellants that Judge Grossman in her ruling of September 3, 1974 erred as a matter of law and fact in adjudging them in contempt of court for violating the terms of the June 19 final judgment and order. We agree.
The September 3, 1974 order finding the defendants in contempt was based upon the catering by the defendants of the Vasserstein-Bialkowicz wedding on August 10, 1974. Judge Popper in his order of October 29, 1974 determined that defendants are permitted to provide catering services where those services are directly related to a religious service performed upon the premises of Temple Emmanu-El and officiated by a rabbi employed by Temple Emmanu-El, whether or not the persons for whom the services have been provided are members of Temple Emmanu-El, as this constitutes a "Temple-initiated function." The August 10 Vasserstein-Bialkowicz wedding service and reception took place at Temple Emmanu-El and a rabbi approved by the Temple officiated. Thus, the catering service rendered by the defendants at this wedding was permissible under the June 19 final judgment as clarified by Judge Popper, and Judge Grossman was in error in adjudging the defendants in contempt. Accordingly, the contempt order of September 3, 1974 is reversed, vacated and held null and void.
We next considered the contention of appellants that the trial court erred in its order of October 29, 1974 as a matter of law and fact in adjudging the appellants in contempt of court and imposing sanctions where the permanent injunction had not been particularized adequately, especially where some activities were permissible and some not. We find this point has merit.
This contempt order was based upon defendants' catering the Katz Bar Mitzvah party on June 29, 1974 on the premises of Temple Emmanu-El. However, the actual religious ceremony was conducted at a private residence.
Intention is one of the elements of contempt. Florida Ventilated Awning Co., Inc., et al. v. Dickson, et al., Fla. 1953, 67 So.2d 218. Further, the rule is that in an injunction proceeding the acts or things enjoined should be specified in the decree with such reasonable definiteness and certainty, considering their nature and character, that a defendant bound by the decree readily may know what he must refrain from doing without the matter being left to speculation and conjecture. Moore, et al. v. City Dry Cleaners & Laundry, Inc., Fla. 1949, 41 So.2d 865.
As appellants contend, the injunctive order is somewhat unclear as to the catering services which are permissible and those services which are not permissible under the terms thereof, and the correctness of this position is illustrated by the inconsistent decisions rendered by the trial court on September 3 and October 29 based on essentially the same facts.
*163 Appellants sought a clarification of the terms of the injunction at the hearing of June 28, 1974 which was held at their request. Based upon Judge Popper's explanation of his order (set out hereinabove) at this hearing, they believed that they were in compliance therewith in confining their catering services to the premises of Temple Emmanu-El and discontinuing their practice of catering at other locations. Hence, it cannot be said that the appellants by catering the Katz Bar Mitzvah party on the premises of the Temple intended to disobey the injunction which lacked the requisite degree of definiteness and certainty.
Hence, the contempt order of October 29, 1974 hereby is reversed and vacated.
We also have an additional reason for voiding the October contempt judgment. This reason relates to the issue of what is a "Temple-initiated function."
The undisputed testimony gleaned from the record reflects that Temple Emmanu-El offers all of its services and facilities to its members and non-members alike. According to Jewish law and tradition, it is incumbent upon the celebrants to have a celebration in the form of a kosher dinner, the Feast of Merit or a Simcha Shel Mitzvah, following a religious service or event.
Temple Emmanu-El contracted with the appellant kosher caterers so that it might be able to provide its members and members of the Jewish community at large with the opportunity to comply with Jewish law and tradition in having a Feast of Merit following a religious service or event such as a Bar Mitzvah or marriage ceremony. It therefore follows that the kosher dinners catered on the premises of Temple Emmanu-El are in essence religious functions in themselves carried out under the auspices of Temple Emmanu-El and initiated by the Temple.
We conclude that on the Temple premises catering by the appellants of the June 29, 1974 Katz Bar Mitzvah Feast or Simcha Shel Mitzvah (wherein the actual Bar Mitzvah ceremony was not performed at Temple Emmanu-El) was a "Temple-initiated function," and, therefore, not violative of the provisions of the June 19 injunction. In other words, it is proper for appellants to provide catering services on the premises of Temple Emmanu-El to both members and non-members following a religious ceremony or event, whether or not such ceremony or event is held at Temple Emmanu-El, as this celebration in the form of eating is a "Temple-initiated function." Of course, appellants also are permitted to provide catering services where those services directly are related to a religious service which is performed upon the Temple Emmanu-El premises and at which a rabbi employed or approved by the Temple officiates, whether or not the persons for whom the services have been furnished are members of Temple Emmanu-El, as this constitutes a "Temple-initiated function."
In light of our disposition of appellants' two points on appeal, we find the appeal of plaintiff, City of Miami Beach, from the October 29, 1974 judgment of contempt to be moot and lacking in merit.
For the reasons stated and upon the authorities cited, the contempt order of September 3, 1974 and the judgment of contempt of October 29, 1974 are reversed and vacated.
It is so ordered.